No. 24-3093                            September Term, 2023

1:21-cr-00153-RBW-1

**Filed On:** August 6, 2024

United States of America,

       Appellee

   v.

Daniel Goodwyn,

       Appellant

      **BEFORE:**    Katsas*, Pan, and Garcia, Circuit Judges

## O R D E R

Upon consideration of the emergency motion for stay, the addendum to the motion, the opposition, and the reply, it is

**ORDERED** that the motion for stay be denied. Appellant has not satisfied the stringent requirements for a stay pending appeal. See Nken v. Holder, 556 U.S. 418, 434 (2009); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2021).

### Per Curiam

                                                  **FOR THE COURT:**
                                                  Mark J. Langer, Clerk

                                    BY:    /s/
                                                  Selena R. Gancasz
                                                  Deputy Clerk

---

* A statement by Circuit Judge Katsas, dissenting from this order, is attached.

Katsas, *Circuit Judge*, dissenting: This appeal involves computer monitoring imposed as a special condition of supervised release for a defendant convicted of wrongfully entering the United States Capitol on January 6, 2021. Daniel Goodwyn pleaded guilty to one count of knowingly entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). Goodwyn entered the Capitol and remained inside for a total of 36 seconds. He did not use force to enter, did not assault police officers, and neither took nor damaged any government property. When police instructed Goodwyn to leave the building, he did so.

The district court sentenced Goodwyn to 60 days of imprisonment followed by a one-year term of supervised release. As a special condition of supervised release, the court *sua sponte* ordered the probation office to monitor Goodwyn's computers for the transmittal of "disinformation" about January 6. Sentencing Tr. at 12, *United States v. Goodwyn*, No. 1:21-cr-00153, ECF No. 113 (D.D.C. June 6, 2023). To enforce this condition, the court further required the installation of software on Goodwyn's computers that would enable the probation office to conduct "periodic unannounced searches." Judgment at 5, *Goodwyn*, No. 1:21-cr-00153, ECF No. 108 (D.D.C. June 15, 2023). On appeal, this Court vacated the condition. We held that "[t]he district court plainly erred in imposing the computer-monitoring condition without considering whether it was 'reasonably related' to the relevant sentencing factors and involved 'no greater deprivation of liberty than is reasonably necessary' to achieve the purposes behind sentencing." Order at 1, *United States v. Goodwyn*, No. 23-3106 (D.C. Cir. Feb. 1. 2024) (quoting 18 U.S.C. § 3583(d)(1), (2)). We further instructed the district court, if it wished to impose a new computer-monitoring condition on remand, to "explain its reasoning," to "develop the record in support of its decision," and to ensure that the condition complies with section 3583(d) and with the Constitution. *Id.* (quoting *United States v. Burroughs*, 613 F.3d 233, 246 (D.C. Cir. 2010)).

The district court reimposed the same condition on remand. In an oral hearing, the court said that Goodwyn had made statements on social media that "can be, it seems to me, construed as" urging a repeat of January 6, particularly "on the heels of another election." Status Conf. Tr. at 17–18, *Goodwyn*, No. 1:21-cr-00153, ECF No. 131 (D.D.C. June 27, 2024). In its written order, the court elaborated on what it called Goodwyn's "concerning online activity." Order at 4, *Goodwyn*, No. 1:21-cr-00153, ECF No. 132 (D.D.C. July 10, 2024). This included posting exhortations to "#StopTheSteal!" and "#FightForTrump," soliciting donations to fund his travel to Washington, posing for a livestream while inside the Capitol, confirming his presence there by text, and tweeting opinions such as: "They WANT a revolution. They're proving our point. They don't represent us. They hate us." *Id.* at 3–4. In addressing what the court described as Goodwyn pushing "false narratives" about January 6 after-the-fact, the court, quoting from the government's brief, led with the fact Goodwyn "sat for an interview with Tucker Carlson on Fox News Channel." *Id.* at 4. Finally, in concluding that computer monitoring was reasonably related to Goodwyn's offense, the court reasoned that monitoring would prevent Goodwyn from raising funds to support potential future crimes and would separate him "from extremist media, rehabilitating him." *Id.* at 5–6 (cleaned up).

Goodwyn appealed and moved for a stay. I would grant the motion because, in my view, Goodwyn is likely to prevail on the merits and has shown an immediate irreparable injury. *See Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (factors for stay pending appeal).

As to likelihood of success, *Burroughs* cuts against imposing the computer-monitoring condition at issue here. There, a defendant was convicted of sex crimes against a minor, including serving as her pimp, and was sentenced to 192 months of imprisonment. 613 F.3d at 237. The district court imposed a computer-monitoring condition of supervised release, which the government defended on the ground that "the Internet can be used to arrange sexual encounters with minors and to advertise minors for prostitution." *Id.* at 243. Even on plain-error review, we quickly rejected that argument: "Of course it can. But from drug dealers to Ponzi schemers and smugglers to stalkers—nearly any criminal can use the Internet to facilitate illegal conduct. That an offense is sometimes committed with the help of a computer does not mean that the district court can restrict the Internet access of anyone convicted of that offense." *Id. Burroughs* involved criminal conduct much more serious and ongoing than the one-time, wrongful-entry offense that Goodwyn committed. If concern about Internet usage to commit future crimes or threaten others was insufficient to satisfy section 3583(d) in *Burroughs*, it is likely insufficient here as well. Moreover, the First Amendment significantly limits the government's ability to prohibit speech that is false, *United States v. Alvarez*, 567 U.S. 709, 716–22 (2012) (plurality); *see id.* at 731–35 (Breyer, J., concurring in the judgment); speech that advocates the use of force, *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam); or speech couched as threats, *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam). On this record, I doubt that the vague and broad prohibition on spreading "disinformation" about January 6 would survive First Amendment scrutiny under these standards, which recognize that the "language of the political arena … is often vituperative, abusive, and inexact." *Watts*, 394 U.S. at 708.

As for irreparable injury, it is settled law that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality); *see*, *e.g.*, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam); *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009). So this factor supports Goodwyn regardless of whether we credit his further assertion that he will lose his job as a journalist if the government is allowed to monitor his computer.

The third and fourth stay factors, involving harm to the non-moving party and the public interest, merge in this case, *see Nken*, 556 U.S. at 435, and provide no independent support for the government. Both parties treat these factors as an afterthought. With the two most important stay considerations favoring Goodwyn and with no public interest in enforcing likely unlawful speech restrictions, I would grant the motion for a stay.